UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA MANN,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 21-cv-05630-RS<br><br>**ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

## I. INTRODUCTION

Plaintiff Alicia Mann challenges the decision of the Commissioner of Social Security denying her disability benefits under the Social Security Act. An Administrative Law Judge (ALJ) reviewed Mann's application and determined she was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment, the Commissioner's motion will be granted, and Mann's denied. Mann has not shown the ALJ erred.

## II. BACKGROUND

Mann was born in April of 1967. She has a high school degree and a substantial number of college credits in early childhood education. She previously worked as a teacher in a day care center, and as a counselor. In September of 2017, she suffered nearly complete vision loss in her right eye, allegedly as the result of a stroke.[1] Based on that vision loss and high blood pressure,

---

[1] The Commissioner contends the record does establish the vision loss was caused by stroke. As

1    Mann first applied for disability benefits in April of 2018. See Administrative Record (AR) 88.

2    That application was denied the following month. *Id.*

3    Mann again applied for benefits in April of 2019, asserting she suffered from severe high

4    blood pressure, loss of vision in her right eye as of September of 2017, and "stroke." AR 87.

5    Following denial of that application, Mann sought reconsideration, adding, among other things,

6    that beginning around July of 2019, she experienced forgetfulness, anxiety, and impaired

7    comprehension. AR 98. Although the decision on reconsideration, unlike the initial determination,

8    found Mann had limitations that prevented her from performing the work she had done in the past,

9    it stated her residual functional capacity (RFC) was sufficient to preclude a finding of disability.

10   AR 111.

11   Mann then sought and received a hearing before an ALJ. At the hearing, Mann testified

12   that she can drive, but only locally. AR 44- 45. Her loss of vision in the right eye causes

13   clumsiness; she often bumps into objects because she cannot see to her right and has to be very

14   cautious if she is carrying something. AR 57. Her blood pressure medications tend to cause

15   drowsiness or dizziness, and when she takes them she is in "a sedated state." AR 60. Mann was

16   written up for falling asleep at work. AR 61. She also had to take multiple restroom breaks during

17   work because of the diuretic medication she takes. *Id.*

18   Mann's doctor referred her to mental health counseling because he was concerned she was

19   not taking her severe high blood pressure seriously, but she was unable to go because of a lack of

20   insurance coverage AR 62-63. Mann has discussed her anxiety with her pastor on occasion. AR

21   63. Mann explained the anxiety causes her difficulty with multitasking. AR 64.

22   The ALJ's written decision found that Mann had not engaged in substantial gainful activity

23   (SGA) during the relevant period. As the Commissioner points out, Mann had maintained

24   employment at an SGA level following her loss of vision and after her initial disability claim, up

---

there is no dispute, however, that Mann suffered the vision loss beginning in 2017, and that it is permanent, the precise cause is not material.

until shortly before filing her second claim. There is no dispute, however, that her limited work thereafter never rose to the SGA level. At the time of the hearing, she was earning only small sums caring for a relative's child on a part-time basis. AR 48.

The ALJ further found that Mann has a central retinal arterial occlusion with resulting vision loss in the right eye, and an adjustment disorder with depressed mood. The ALJ concluded these impairments are severe, but do not meet or equal the listed impairments. The ALJ then determined Mann has the following RFC:

> [A] full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform tasks that require only occasional need for depth perception; however, she is able to operate a motor vehicle. Additionally, the claimant is able to frequently as opposed to constantly, stoop or bend. In terms of mental limitations, she is able to perform simple and routine tasks in a low stress work environment. For the purposes of this determination, a 'low stress work environment' is defined as one with few changes in tasks or environment/surroundings; requiring little independent judgment or decision-making; only occasional interaction with supervisors, coworkers, and the general-public; no fast-pace production, such as that performed on an assembly line; and no high production quotas, such as those found in piecemeal work.

The ALJ found, given the RFC limitations, Mann could not return to her past relevant work. Relying on the testimony of a vocational expert (VE), the ALJ found that Mann could perform the occupations of Marker, Marker II, and Ticket Taker, and that she therefore is not disabled. The the Appeals Council denied Mann's request for review and this action followed.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In determining whether a decision is supported by substantial evidence, the court must examine the administrative

record as a whole, considering all of the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id*. at 1258. In Social Security cases, federal courts "are not triers of fact" and a court "may not substitute its judgment for that of the [ALJ]." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

## IV. DISCUSSION

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow the five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as *a priori* disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's RFC and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4). An individual's RFC is the most she can still do despite her limitations. See 20 C.F.R. § 416.945(a)(1).

1. Opinion of Dr. Patricia Spivey

Mann contends the ALJ erred in finding the medical opinion of Dr. Patricia Spivey unpersuasive, in part. The Commissioner emphasizes this case is governed by new regulations applicable to disability benefits applications filed on or after March 27, 2017. The Ninth Circuit has held the amended regulations displace prior case law that required an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

> For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.

*Id.*

Dr. Spivey, a Doctor of Psychology, personally examined Mann to prepare a Mental Status Disability Report. AR 439-441. Dr. Spivey evaluated Mann's level of impairment in eleven specific categories of work-related abilities. Dr. Spivey opined Mann had no impairments in following simple instructions, maintaining adequate attention/concentration, and communicating effectively with others verbally. Dr. Spivey asserted Mann had mild impairments in her ability to follow complex instructions, to communicate effectively in writing, and to interact appropriately with co-workers, supervisors and the public on a daily basis. Dr. Spivey found "mild/moderate" impairment in Mann's ability to maintain adequate pace or persistence to complete 1-2 step simple repetitive tasks, and "moderate/marked" impairment as to completing complex tasks. Mann was judged to suffer moderate impairment in her ability to adapt to changes in job routine and to maintain emotional predictability. Finally, Dr. Spivey opined Mann had marked impairment in her ability to withstand the stress of a routine workday. AR 441.

The ALJ appears to have accepted most of these findings and incorporated them into her conclusions that Mann could not perform her past relevant work and the RFC that limited her to simple and routine tasks in a low stress work environment. Mann does not argue otherwise. Mann

contends, however, that the ALJ erred to the extent she disregarded Dr. Spivey's assessment that Mann had marked impairment in her ability to withstand the stress of a routine workday. Mann argues the testimony of the VE established that the "marked" limitation in withstanding the stress of a routine workday would preclude competitive employment.[2]

Under the current regulations, "the two most important factors" used to evaluate the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be. § 404.1520c(c)(1). Consistency means "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." § 404.1520c(c)(2).

Here, Dr. Spivey's own examination finding showed that Mann was oriented, had unremarkable and rational thought content, and linear, goal directed, and organized thought process, and good insight. Dr. Spivey asserted Mann had a marked limitation in her ability to withstand the stress of a workday but included no explanation of why she believed that to be so. The ALJ set out in detail why, in light of the complete record, she found Dr. Spivey's opinion unpersuasive to the extent it suggested greater limitations than those reflected in the RFC. The ALJ did not err in relying on Dr. Spivey's failure to support her conclusions with her own findings and diagnosis.

Mann places heavy emphasis on a supposed failure by the ALJ to consider her lack of medical insurance as an excuse for not having sought mental health treatment. Although the ALJ did discuss whether Mann had adequately shown she availed herself of all possible sources of

---

[2] The VE was asked to assume that a marked limitation in this arena meant a person would be "unproductive, or performing a task incorrectly" at least 15 percent of the workday. AR 82. The VE responded that "no work in the national economy would tolerate" an employee being "off-task because of the marked limitations at 15 percent." *Id*.

1   assistance, the more important point was the lack of objective medical evidence showing any
2   mental impairment requiring greater limitations in the RFC. See AR 23. Indeed, the ALJ
3   effectively accepted Mann's "rationale" for not having sought treatment (AR 24), but that does not
4   translate into a basis for finding disability. *Cf.* SSR 18-3p (explaining the circumstances under
5   which a claimant who otherwise is eligible for disability will not be *disqualified* for having failed
6   to follow prescribed treatment that could be expected to restore the ability to engage in SGA.)
7   Accordingly, the ALJ did not err in assessing Dr. Spivey's opinion.

   2. Mann's testimony

   Mann contends the ALJ should have given more weight to the testimony she presented at the hearing regarding the extent of her impairment. The ALJ, however, properly considered the record and gave clear reasons supported by substantial evidence for the findings she made.

   The Act and the regulations prohibit granting benefits based solely on a claimant's subjective complaints. See 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). Thus, where the claimant has provided objective medical evidence of an impairment that could reasonably produce the alleged symptoms, the ALJ evaluates the intensity and persistence of the symptoms. See Social Security Ruling (SSR) 16-3p. The ALJ must then determine whether her statements about symptoms are consistent with (1) the objective medical evidence, and (2) the other evidence in the record. See 20 C.F.R. § 416.929(c)(2)-(3); SSR 16-3p. An ALJ must make specific findings about a claimant's allegations, properly supported by the record and sufficiently specific, to ensure a reviewing court that she did not "arbitrarily discredit" a claimant's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

   As an initial matter, Mann has identified no clear assertions or express claims she made in her testimony that, even if fully credited, would establish that the limitations in the RFC do not

sufficiently address her physical and mental impairments. To the extent Mann's testimony should nevertheless be more broadly understood at least to imply an inability to work at an SGA level, the ALJ did not err in declining to credit the degree to which she claimed her symptoms are disabling.

As directed in the regulations, the ALJ considered the objective medical evidence in determining the RFC and how consistent Mann's statements were with that evidence. See 20 C.F.R. 416.929(c)(2); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"). While the ALJ could not reject Mann's express or implied characterizations of her limitations solely based on the medical evidence, it was a relevant factor to consider. 20 C.F.R. 416.929(c)(2); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor.").

The ALJ also evaluated Mann's testimony regarding her alleged symptoms and limitations in light of her reported daily activities. 20 C.F.R. § 416.929(c)(3)(i); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider many factors in weighing a claimant's testimony, including daily activities); *Molina*, 674 F.3d at 1112 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Throughout the relevant period, Mann was able to drive, attend church, prepare meals, dress and feed herself without difficulty. AR 21-22. Additionally, Mann continued to work, albeit not at an SGA level.[3] Mann correctly observes that one need not "vegetate in a dark room excluded from all forms of human and social activity" to be found disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ, nevertheless was entitled to conclude Mann's daily activities undermined her

---

[3] Mann faults the ALJ for stating she had still been able to "go to work on a regular basis" and contends she in fact has not worked since her alleged onset date. She testified, however, that she went back to work at the school in the fall at reduced hours after filing her second disability claim (AR 68-69), and that she was continuing to earn money for childcare at the time of the hearing, in a small amount. AR 46-48.

assertions regarding the degree of her symptoms.

The ALJ acknowledged the evidence in the record showing Mann has a number of significant limitations. Substantial evidence, however, supports her conclusion that no greater limitations than those captured in the RFC were warranted. *See Burch*, 400 F.3d at 680 (finding the ALJ properly discounted credibility where the claimant's activities suggested higher functionality, including caring for personal needs, cooking, cleaning, shopping, interacting with family, and managing her finances); *Fair*, 885 F.2d at 604 (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, using public transportation, and driving).

### 3. Vision limitation

Mann contends the ALJ erred by including nothing in the RFC directly addressing the blindness in her right eye other than the limitation that she should have only "occasional" need for depth perception. Mann does not explain, however, what additional express limitation in the RFC would be warranted, or what evidence would support it. Mann previously argued to the ALJ that her loss of vision worked in combination with her mental conditions to limit her ability to function. While that may be, she has not shown how the existing limitation in the RFC to a low stress work environment is insufficient.

Mann does argue that the jobs identified by the ALJ (based on the VE's testimony) require "near vision" or "frequent near visual acuity," according to the Dictionary of Occupational Titles and the Bureau of Labor Statistics. She has presented nothing, however, to suggest that near visual acuity in *both* eyes is required, and such a conclusion is not otherwise intuitive. There is no basis to find the ALJ erred on this point.

### 4. Lay witness

Finally, Mann argues the ALJ committed reversible error by failing even to mention a third party "function report" submitted by her adult son, Byron Thomas, who lives with her. Thomas'

descriptions of his mother's limitations, abilities, and activities was consistent with her testimony at the hearing. Thomas noted Mann's vision, energy, and concentration deficits. AR 243-250. Thomas also reported, however, that Mann went to work daily (AR 244) and that on a "regular basis" she goes to "church, work, grocery store, laundry mat." AR 247.

Mann does not counter the Commissioner's showing that under the current regulations, the ALJ has no obligation expressly to "articulate" how evidence from nonmedical sources was considered. *See* 20 C.F.R. § 404.1520c(d). Although Thomas's statements generally supported his mother's contentions, they added nothing that required separate express analysis or that would support a different result.

## V.  CONCLUSION

Mann's motion for summary judgment is denied, and the Commissioner's motion is granted. The ruling that Mann failed to establish disability is upheld.

**IT IS SO ORDERED**.

Dated: December 11, 2023

_____
RICHARD SEEBORG
Chief United States District Judge